NATHANIEL A. FISHER & others, Trustees, *vs.* JOSEPH A.
BUDLONG.

Although a buyer is not liable in a suit for deceit, for misrepresenting a seller's chance of
selling for a good price, when he is under no legal obligation to the seller for the accu-
racy of his statement, yet he will be liable if there is any peculiar relation between the
parties implying or leading to confidence.

Hence a president of an insurance company, who professed a desire to aid a stockholder
in selling his stock, and advised and effected a sale thereof at a certain price, causing
the transfer to be made to a third person whom the stockholder supposed to be the pur-
chaser, but who really took it for the president, and afterwards transferred it to him,
was held liable to such stockholder for the difference between the real value of the stock
and the price for which it was sold.

ACTION OF THE CASE for deceit in inducing the plaintiffs to
sell their stock in the Commercial Insurance Company for less
than its real value. The facts of the case, which were submitted
to the court both in fact and law, a jury trial having been
waived, are stated in the opinion of the court.

*B. N. Lapham,* for the plaintiffs, cited *Smith* v. *Countryman,*
30 N. Y. 655; Kerr on Fraud & Mistake, pp. 31, 84, 87, 94,
143, 150, 385, 386.

*Hart & Stiness,* for defendant, cited *Irvine* v. *Kirkpatrick,* 3
Eng. L. & E. 17 (note); *Laidlaw et al.* v. *Organ,* 2 Wheat.
178; *Kintzing* v. *McElrath,* 5 Pa. State, 467; *Shrewsbury* v.
*Blount et al.* 2 Scott N. S. 588; *Setzar* v. *Wilson et al.* 4 Ired.
501; *Vernon* v. *Keys,* 12 East, 632; *Farnam* v. *Brooks,* 9 Pick.
213; *Wason* v. *Wareing,* 15 Eng. L. & E. 121; 2 Pars. on Cont.
p. 275 (4th ed.); *Hammett* v. *Emerson,* 27 Maine, 308; *Sanford*
v. *Handy,* 23 Wend. 260.

POTTER, J. This is an action for deceit in inducing the
plaintiffs to sell certain insurance stocks for less than their fair
value. A jury trial was waived, and the case was heard by the
full court October 7, 1873. The declaration alleged that the de-
fendant was president of the Commercial Insurance Company,
and said plaintiffs were owners of certain shares in said com-
pany's stock; and that defendant, intending to deceive and in-
duce the plaintiffs to sell for less than the value thereof, falsely
represented to the plaintiffs . that said company. had met with
losses, was not doing a good business, and that the plaintiffs
could expect no dividends for a long time, and that the stock was

worth no more than thirty-five dollars per share; that if they wanted an income they had better sell and reinvest, but that he would inquire, &c.; and in a short time defendant reported that he had an offer of forty-eight dollars, which was a very good offer, all which representations were false; but plaintiffs, relying on them as true, sold, as they were informed by defendant, to one L. W. Anthony; but that said sale was really made for the defendant himself; that said stock was then worth more, namely, one hundred dollars per share, and known to the defendant to be so. And so the defendant deceived and defrauded the plaintiffs.

The plaintiffs owned in November, 1867, certain shares in the stock of an insurance company (par value fifty dollars), of which the defendant was president. The plaintiff Fisher testified that he had bought some shares and paid fifty-four dollars; the defendant meeting him, and being told of it, said he was sorry, as it had been offered to him (defendant) for less, and he could have bought it for less. The plaintiff replied he had inquired of the secretary, who told him it was worth fifty-five dollars. The defendant said the secretary knew more about books than about insurance business. The defendant, on being asked what is was worth, said, probably thirty-five dollars; they had not done a good business, had unadjusted losses, and could not pay a dividend; that the value would depend on the unadjusted claims; and advised him to sell, and said he might hear of some one who would buy. A few days after, he said he had not heard of any one. Soon after, defendant told the plaintiff he, defendant, thought he knew of one; and the next time they met defendant said he had an advantageous offer, a good offer, forty-eight dollars. The plaintiff told defendant he confided in him, and should do it on his representations. They went to the transfer book, and it was transferred to L. W. Anthony. Defendant paid with his own check. The defendant asked, and after some objection the plaintiff paid him, a commission for selling it for him. The shares were afterwards transferred into the name of the defendant, and the plaintiff says the defendant afterwards told him he bought for himself.

The defendant testified that he told the plaintiff the stock had been offered to him for less; that they had unadjusted losses; and that on a calculation made on what he considered a right basis, it

was worth about thirty-five dollars ; that they had heard of several losses lately ; that he told him he could not buy his shares without assistance ; he had a man in his mind, and the next time he met plaintiff he told him he had seen Anthony and had a good offer, forty-eight dollars ; that Anthony furnished a part of the purchase money. The fact that a commission was demanded and paid was not denied.

The defendant also testified that he bought at different times two or three hundred shares, to get control of the company, and to change its management ; that the chance of buying the Fisher stock first suggested this to him, and explained his objects in not having this and other stock purchased by him transferred to his own name.

Evidence was put in as to other purchases by the defendant, two of which were made by him in the name of a third person, and a commission charged. The plaintiff denied the defendant's version of the conversation as to the basis on which he calculated the value ; and said that the defendant did not say that he wanted the stock for a particular purpose, and that he could get some one to assist him in it ; and testified that he never suspected that the defendant was buying for himself.

In February, 1869, the company voted to wind up, and after paying out eighty dollars and sixty cents per share, the defendant bought out the rest at nine dollars per share. Of this latter amount he said he lost a portion in settling.

⌐In the case of an ordinary sale of goods, it is now well settled, that where there is no fraudulent representation and no special confidence reposed, the vendor is not obliged to disclose all the circumstances within his knowledge which might affect the value of the thing sold./ The greater part of the cases in the books are where it is claimed that there has been some fraud on the part of the seller. But there is no reason why the same principle should not apply as well to the case of a person endeavoring to purchase an article. And we find it has been so applied. See cases in Benjamin on Sales (2d ed.), 355 ; *Kintzing et al.* v. *McElrath et al.* 5 Pa. State, 467 ; *Smith* v. *Countryman*, 30 N. Y. (3 Tiffany) 655, 670, 681. The decision in *Laidlaw* v. *Organ*, 2 Wheat. 178, 195, where there was concealment of knowledge by a vendee, gave rise to a great deal of discussion when made, but

has for a long time been considered as settled law. See Verplanck on Contracts, and the articles in the North American Review and American Jurist and the law magazines, to which it gave rise; 2 Kent's Com. (11th ed.) *482, criticised in Benjamin on Sales (2d ed.), 355. And while, in the language of Lord Ellenborough, a buyer should not be liable to a suit for deceit for misrepresenting a seller's chance of selling for a good price, where the buyer is under no legal pledge or obligation to the seller for the accuracy of his statement (*Vernon* v. *Keys,* 12 East, 632, 638), yet if there be any peculiar relation implying confidence or leading to confidence, it would take the case out of the ordinary rule. In the present case there are peculiar circumstances. The plaintiff was a stockholder in, and the defendant president of, an insurance company. Now, if the defendant had gone to the plaintiff, and without any special representations made an offer of a certain sum, and the plaintiff had accepted, he could have had no right to complain. As a matter of common sense, the fact that the president of the company, presumed to be fully acquainted with its condition, offered a certain sum, would put the seller on his guard, and he might in most cases reasonably consider that he might get more. The defendant's counsel supposes a case of a buyer of a horse, suggesting to the seller that the horse had the glanders, and inquires if, in case he obtained the horse for a less price on that account, he would be liable in deceit. But to make the case resemble the present, we must add the circumstances that the buyer was a horse doctor, and professed not to be buying for himself, but offered as a friend to aid the seller in selling to some one else for a good price. The material point in the present case, and which we consider to be fully proved, is, that the defendant professed to be aiding the plaintiff in selling his stock, and getting a good price for it. He offers to procure him a purchaser, and after a while informs him he has done so; and upon his advice the sale is made and the stock transferred to the supposed purchaser, who afterwards transferred to the defendant, and the defendant demanded, and the seller paid, a commission for his services in the sale. The seller has no suspicion that he is actually selling to the defendant, but is led to suppose that the defendant is acting as his friend, or in fact his agent, to advise and assist him in the sale.

Thus the seller was led to repose a trust and confidence in the defendant. And apart from this, the plaintiff had a right to suppose that the defendant as president of the company knew its situation, and that he could rely upon his statements as to value; as a stockholder, he had in fact a legal right to call upon him for information, and the defendant must have known that, from his understood relation to the business, his statement would be so relied on.

. In some of the statements made by the defendant there was more or less truth; that the company had met with losses, &c., &c.; but when the defendant proceeds to fix a value on the stock and advise a sale, his opinion carries weight from his known position and opportunities of knowledge, and more especially when he is supposed to be acting disinterestedly, and as a friend.

Officers of corporations have in many cases been held to sustain a relation of trust to their stockholders, and although any single officer cannot perhaps be considered as standing in the relation of trustee to each stockholder, yet even in such a case it would be considered as a reason for confidence, and more especially when this officer is practically the sole manager of the corporation, and the stockholder has a right to call on him for this very information. Much evidence was offered as to the condition of the company, and the market price of its stock at various times. The defendant contended that his mode of stating its affairs was the safe and conservative one, while it was contended on the other side that the defendant's representations had been the means of keeping down the market value of the stock; and several witnesses testified that the mode of valuation as proposed by the secretary was the common and usual one. We do not deem it necessary to recapitulate it.

*We enter judgment for the plaintiffs for $1,989 and costs, being seventeen dollars for each share of the stock purchased of them by the defendant.*